DAVIS, Senior Judge, Specially
concurring.
Because' in Yegge v. State, 88 So.3d 1058, 1059-60 (Fla. 2d DCA 2012), this court held that’ Yegge’s ten-year sentence — including the 10/20/Life minimum mandatory enhancement — is-legal, I must concur with the majority opinion. However, it is my opinion that because Yegge maintained his youthful offender status when he was re-sentenced on remand, the 10/20/Life sen- *558 fencing enhancement[1] statute, section 775.087(2), does not apply to this new sentence.[1] Accordingly,, it is my belief that this court should recede from Yegge, 88 So.3d 1058, reverse Yegge’s sentence, and remand this case with instructions that Yegge be resentenced as a youthful-.offender to a term within the statutory maximum that does not include the 10/20/Life enhancement. '
When this court reversed the denial of Yegge’s rule 3.800(a) motion, we concluded “that the sentencing court must maintain the defendant’s youthful offender status upon resentencing for a violation of probation even when the violation [i]s substantive.” Yegge, 88 So.3d at 1059-60. However, this court denied Yegge’s additionally requested relief regarding the minimum mandatory enhancement to Yegge’s sentence,- observing that “[a] youthful offender who commits a substantive violation of probation can be sentenced to the maximum séntence allowable for the original offense” and that “the • six-year limitation applicable to youthful offender sentences no longer applies.” Id. at 1059 (emphasis omitted) (citing § 958.14, Fla. Stat. (2007), which provides that “no youthful offender shall be committed to the custody of the department for a substantive violation for a period longer than the maximum sentence for the offense for which he or she was found guilty”). Accordingly, this court concluded that because the maximum sentence for armed burglary under section 810.02(2)(b), Florida Statutes (2002), is life and .the six-year cap for the originally imposed youthful offender sentence under section 958.04 no longer applied, Yegge’s ten-year sentence, including the minimum mandatory designation, was within the allowable sentencing range and was legal. 88 So.3d at 1059. This court did not, however, specifically consider that imposing the minimum mandatory against Yegge required the additional application of the 10/20/Life sentencing enhancement to a youthful offender sentence. Instead, we reversed the postconviction court’s order and remanded solely “for amendment of Yegge’s sentence to reflect his youthful offender classification.” Id. at 1060.
On remand, the-trial court resentenced Yegge by reinstating his youthful offender status and leaving his ten-year sentence, including the 10/20/Life minimum mandatory enhancement, intact. Although this is in keeping with the holding of Yegge, I conclude that such constitutes an illegal sentence because 10/20/Life sentencing enhancements do not apply to- youthful offender sentences.
Initially, I note that this court has held that sentencing enhancements pursuant to section 775.087(2) do not apply to youthful offender sentences at the time of original sentencing. In Wooten, 782 So.2d 408, the State challenged Wooten’s sentence on direct appeal, arguing that the trial court erred in not applying the 10/20/Life enhancement to the youthful offender sentence imposed. This court affirmed, concluding that “the 10/20/Life statute contains no language to supersede the youthful offender sentence and ... that minimum mandatory sentencing is not applicable when one is sentenced as a youthful offender.” Id. at 410. Admittedly, Wooten is factually distinguishable from the instant case in, that there the State was challenging Wooten’s original youthful offender. sentence rather than a sentence imposed after a substantive vio *559 lation of probation. However, the clear holding of the Wooten opinion is that the 10/20/Life enhancement statute does not apply to the original sentence imposed under the Youthful Offender Act. The question before this court in the instant appeal is whether an individual’s retention of youthful offender, status after a substantive violation of supervision likewise prohibits imposition of the 10/20/Life minimum mandatory. And I conclude that it should.
In doing so, I disagree with the majority’s reasoning in three ways. First, the majority dismisses the reasoning in.Ar-nette, 604 So.2d 482, as limited only to the application of .the six-year sentencing cap to resentencing of youthful. offenders following a substantive violation of supervision. The majority concludes that Amette has no application here because the legislature amended the cap in 1990, limiting it to technical violations: only. I do recognize that Amette arose in a different posture than the instant case, but I nevertheless find its reasoning instructive.
In that case, at Arnette’s original sentencing in 1981 on a charge of burglary, the trial court designated him to be a youthful offender and imposed a split sentence of four years’ prison and two years’ community control. He then violated the conditions of his community control in 1984, and the sentencing court resentenced him to life in prison. The Fifth District vacated the life sentence, concluding that it was illegal. Arnette v. State, 566 So.2d 1369, 1373 (Fla. 5th PCA 1990). On review, the Florida Supreme Court noted that at the .time of Arnette’s resentencing,
section 958.14, Florida Statutes (1983), read: “A violation or alleged violation of the terms of a community control program shall subject the youthful offender to the provisions-of s. 948.06(1).” Subsection 948.06(1), Florida Statutes (1983), provided that, if community control is revoked because of a violation, the court may “impose any sentence which it ■might have originally imposed before placing the probationer or offender on probation = or into community control.” Thus, we must determine what sentence the trial judge could have imposed on Arnette originally.
604 So.2d at 483. ' In answering that question, the supreme court specifically addressed- a 1985 amendment to section 958.14 by which the legislature added the provision that “no youthful offender shall be committed to the custody of the department for such violation for a period longer than [six] years or for a period -longer than the maximum sentence for the offense for which he was found guilty, whichever is less.” • See 604 So.2d at 484. The court interpreted this language to be “a declaration of [the legislature’s] prior intent” and observed as -follows:
It has always been clear that the legislature intended to treat youthful offenders differently than adults. Unless the legislature clearly states otherwise, youthful offenders maintain youthful offender status even when they violate a condition of community control. Section 958.U did not specifically authorize applying adult sanctions to a youthful offender, and now we-perceive the legislature’s intent to' have been to limit penalties against youthful offenders to six years. ■
Id, (emphasis added)., Thus, the. court affirmed the decision of the Fifth District to vacate Mr. Arnette’s life sentence and “authorize[d] a total of six years’ imprisonment.” Id.
As the majority points, out, in 1990, the legislature again amended section 958.14, changing the second sentence of -the statute to read as follows:
*560 However, no youthful offender shall be committed to the custody of the department for a substantive violation for a period longer than the maximum-sentence for the offense for which he or she was found guilty .. or for a technical or nonsubstantive violation for a period longer than [six] years or for a period longer than the maximum sentence for the offense for which he or she was found guilty, whichever is less....
I agree that this amendment establishes the legislature’s intent to remove the six-year cap for youthful offender sentences following substantive violations of probation. But the balance of the section was left unchanged. Therefore, both the pre-1990 version of section 958.14 — which was at issue in. Amette — and the post — 1990 version of section 958.14 — at issue here— state in the first sentence that “[a] violation or alleged violation of probation or the terms of a community control program shall subject the youthful offender to the provisions of s: 948.06(1).”
In Arnette, the supreme court concluded that this language in section 958.14 should not be considered as the legislature’s statement that every conceivable adult sanction should be available upon resen-tencing youthful offenders for violations of probation without limitation. 604 So.2d at 484 (“Section 958.14 did not specifically authorize applying adult sanctions to a youthful offender.”). And although subsequent amendments have expanded the range of postviolation youthful offender sentencing options beyond those available under the version of section 958.14 applicable in Amette, I see nothing in the post-Amette amendments to section 958.14 that changes this conclusion or authorizes thé limitless application of section 948.06(1) to youthful offender sentences following a substantive violation. The post-Areeiie amendment merely altered the scope of the youthful offender limitations according to the seriousness of the violation of supervision. Accordingly, I conclude that Ar-nette applies and supports a reversal in this case. ■ ■ ■
I also disagree with the majority’s assessment that thé first line of section 958.14 is an “unqualified” directive that upon a substantive violation' of supervision youthful offenders are to be resentenced only pursuant to section 948.06(1). In my opinion, this language most certainly has been qualified — both by case law requiring that a youthful offender designation be retained upon' resentencing after a violation of probation,- see, e.g., Vantine v. State, 66 So.3d 350, 352 (Fla. 2d DCA 2011), and more pointedly by the second sentence of section 958.14, which requires that “no youthful offender shall be” resen-tenced “for a substantive violation for a period longer than the maximum sentence for the offense for which he or she was found guilty.” (Emphasis added.) The first sentence of section 958.14 serves to sever the restraints of the original youthful offender sentencing caps of section 958.04(2), but the second sentence dictates the boundaries for resentencing after substantive violation.
It is the interpretation of the phrase “maximum sentence for the offense for which he or she was found guilty” in the second sentence that brings me to my final disagreement with the majority’s opinion. The majority correctly ■ states that the youthful offender who is found to have committed a substantive violation of supervision is subject to this section 958.14 language. But the majority then concludes that “a defendant’s maximum exposure in a criminal case is controlled by the charging document.” (Emphasis added.) It is with this language that I disagree because “the maximum sentence for the offense” is not necessarily synonymous with “a defen *561 dant’s maximum - exposure in a criminal case.”[2] The maximum sentence for an offense is determined by the legislature via statute. But a defendant’s maximum exposure is determined by the statutory maximum sentence combined with other specific factors as related to the particular defendant or the specific circumstances of the commission of the offense. See, e.g., §§ 775.082(9)(a), .084, .087.
In the instant ease, Yegge was adjudicated guilty of an armed burglary, which carries a maximum sentence of life. Because Yegge’s offense involved the use of a firearm, which is not an element of the offense, see § 810.02(2)(b), absent any youthful offender considerations, his maximum exposure would have included the mandatory 10/20/Life enhancement in addition to the statutory maximum life sentence. Under the circumstances of the instant case, it is clear that the statutory maximum and Yegge’s maximum exposure were not the same.
An examination of Yegge’s original sentence illustrates why this distinction is important. At the time of his original conviction and sentence, the trial court’s decision to sentence him as a youthful offender was discretionary. Once the trial court elected to exercise its discretion and sentence Yegge as a youthful offender, that designation trumped the otherwise mandatory 10/20/Life statute and removed the possibility of enhancing his sentence with a ten-year minimum mandatory. See Bennett v. State, 24 So.3d 693, 694 (Fla. 1st DCA 2009); see also State v. Drury, 829 So.2d 287 (Fla. 1st DCA 2002). This is true, and in keeping with the holding of Wooten, 782 So.2d 408, because “[t]he youthful offender sentencing statute itself expressly provides that the sentencing alternatives prescribed therein are [i]n lieu of other criminal penalties authorized by law.” See Holmes v. State, 638 So.2d 986, 987 (Fla. 1st DCA 1994) (second alteration in the original) (internal quotation marks omitted).
When Yegge then committed a substantive violation of his probation, pursuant to the second sentence of section 958.14, Yegge’s new sentence could be no “longer than the .maximum sentence for” armed burglary, According to section 810.02(2), the trial court could have sentenced Yegge to life because “[bjurglary is a felony of the first-degree, punishable by imprisonment for a term of years not exceeding life imprisonment or as provided in s. 775.082, s. 775.083, or s. 775.08f.” (Emphasis added.) Although, section 810.02(2) makes reference to' section 775.084, which sets forth sentencing enhancements for violent career criminals, habitual felony offenders, and habitual violent felony offenders, the burglary statute contains no additional reference to the availability of a minimum mandatory sentencing enhancement pursuant to section 775.087,[3] As such, upon resentencing of Yegge, the trial court exceeded the scope of section 958.14 by imposing the 10/20/Life minimum mandatory enhancement to his ten-year sentence.
Furthermore, in my opinion, the holdings in Mendenhall, 48 So.3d at 750, and Lareau, 573 So.2d at 815, which are cited by the majority to support' its conclusion that the maximum sentence for the original offense includes 10/20/Life enhancements, are inapplicable to the instant case because they are distinguishable. First, *562 neither Mendenhall nor Lareau was sentenced as a youthful offender, and • the sentences at issue in those' cases were original sentences, not ones imposed upon revocation of probation. Furthermore, the specific issue in Mendenhall was
whether the mandated “minimum term of imprisonment of not less than [twenty-five] years and-not more than a terta of imprisonment of life in prison” under section 775.087(2)(a)(3) gives the trial court the discretion to impose a' sentence anywhere within the range of twenty-five years-to life, even if that sentence exceeds the statutory maximum of thirty years provided for under section 775.082(2)(c). ■
48 So.3d at 745. That case in no way addressed whether section 775.087(2) enhancements are part of the statutory maxi.mum sentences a youthful offender might face upon resentencing after a substantive violation of supervision. . ⅛ . '
Lareau is also factually distinguishable because the three-year minimum mandatory applied in that case was part of a plea bargain to which Lareau agreed. Additionally, Lareau addressed the application of section 775.087(1), Florida Statutes (1985), which is a reclassification statute. The “consequential enhancement of penalties” referred to in Lareau are increased penalties based on the, reclassification of .the degree of the offense. 573 So.2d at. 815. Such reclassification is not an enhancement to the sentence like a 10/20/Life minimum mandatory, but rather it is .an increase in the sevei-ity of the offense itself. Furthermore, reclassification is not am issue in the instant appeal. Finally, the version of section 775.087 at issue in La-reau did not include the 10/20/Life enhancements at issue here because this provision was not enacted until 1999,. See ch. 99-12, § 1, at 538-42, Laws of Fla.
Because this court is not receding from Yegge, 88 So.3d 1058,1 must concur in the result of the majority. However, for the reasons I have discussed, I would recede from this court’s opinion in Yegge to the extent that it affirms the application of the 10/20/Life sentencing enhancement ■ to a youthful offender sentence and would remand for resentencing of Yegge as a youthful offender to a term'within the statutory maximum but not to include the 10/20/Life enhancements.
. I would also note that the Fourth District has recently taken the contradictory position that upon' resentencing for’ a substantive' violation .of supervision by a youthful offender,, the trial court has the discretion to impose a non-youthful offender sentence, for which an offense using a firearm would necessarily include the application of the 10/20/Life minimum mandatory enhancement. See Goldwire v. State, 73 So.3d 844 (Fla. 4th DCA 2011). As such, in reversing to recede from Yegge,’ I also would .certify conflict with Goldwire, .73 So.3d 844, on this issue.

. See generally Young v. State, 86 So.3d 541, 543 (Fla. 2d DCA 2012) (recognizing Section 775.087(2) to be an enhancement statute by noting that "in order for a court to enhance a defendant’s sentence based on section 775.087(2), the grounds for the enhancement must be clearly charged in the information”).

. I would also note that a defendant’s maximum exposure is determined by the offenses adjudicated at the time of judgment rather than those charged in the information.

. Cf. Polite v. State, 973 So.2d 1107, 1115 (Fla.2007) (“[W]e have applied the principle that the [(legislature knows how to accomplish what it has omitted in a provision, in construing related statutes.” (internal quotation marks omitted)).